UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIE WILLIAMS,

                    Plaintiff,

    v.

SERGEANT BONANO, *et al.*

                    Defendants.

No. 24-CV-1586 (KMK)

OPINION & ORDER

---

Appearances:

Willie Williams
Attica, NY
*Pro Se Plaintiff*

Jeb Harben, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Willie Williams ("Williams" or "Plaintiff"), proceeding pro se, brings this Action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Sgt. Bonano ("Bonano"), C.O. Russien ("Russein"), Cheverez ("Cheverez"), and C.O. Cunningham ("Cunningham") (collectively, "Defendants"), alleging a violation of his Fourteenth Amendment rights. (*See* Am. Compl. ("AC") (Dkt. No. 34).) Before the Court is the Defendants' Motion to Dismiss (the "Motion"). (*See* Defs.' Mot. to Dismiss ("Defs. Mot.") (Dkt. No. 44).) For the following reasons, the Court grants the Motion.

I. Background

A. Factual Background

The Court will take all well-pleaded factual allegations in the Amended Complaint ("AC") as true for the purposes of this Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023) ("The factual summary below is derived from the allegations in the [complaint], which we must accept as true in reviewing a motion to dismiss.").

At all times relevant to the instant Action, Plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing"). (*See* AC, Ex. A at 10.) Defendants appear to be officers and supervisors employed by Sing Sing. (*See generally id.*)

On March 22, 2023, Russein entered Plaintiff's cell, frisked Plaintiff, and asked him to step outside while he searched his cell. (*See id.* ¶ 3.) When Plaintiff asked Russein who ordered the search of his cell, Russein claimed he did not know. (*See id.*) The ticket that apparently authorized the search of Plaintiff's cell was not "endorsed" by any other corrections officer, sergeant, or area supervisor—which Plaintiff alleges violated DOCCS Directives. (*See id.*) In Plaintiff's cell, Russein discovered contraband, including an unauthorized cell phone, a pair of headphones, and a charging cable connected to a phone charger/adapter. (*See* AC, Ex. C at 21.)

On April 4, 2023, Plaintiff was subject to a disciplinary hearing relating to the discovery of the contraband. (*See* AC, Ex. at 15.) Cheverez acted as the hearing officer. (*See id.*; *see also* AC ¶ 4.) Plaintiff claims that Cheverez initially admitted that there was no endorsement on the ticket authorizing the search of his cell, (*see id.* ¶ 4), but later claimed that Bonano's signature was "there the whole time," (*see* AC ¶ 5). Plaintiff alleges that Bonano initially claimed to have been present during the search, but later admitted on the record that she had not been. (*See* AC ¶ 6.) Plaintiff also states that at the hearing, Cunningham claimed to have been present during

2

the search, and claimed that Bonano had ordered the search, (*see* AC ¶ 7); although during the hearing, Cunningham was unable to testify as to where the contraband was found in Plaintiff's cell, *(see id.)*

During the hearing, Plaintiff's Tier Assistant requested to call Plaintiff as a witness, but "Tier Personnel" denied this request.[1] (*See* AC ¶ 8.) The Tier Assistant also requested to call another a corrections officer named Vasquez, who Plaintiff claims was in fact present during the search of Plaintiff's cell, but this request was also denied. (*See id.*) Plaintiff was unable to speak at the Tier III hearing. (*See id.*) Plaintiff was found guilty and sentenced to 60 days in the special housing unit ("SHU") (in addition to the 13 days he served prior to the hearing), as well as a 60-day loss of phone privileges, commissary, and package privileges. (*See* AC, Ex. C at 15.)

B. Procedural Background

Plaintiff initiated the instant Action on August 15, 2023 in the Western District of New York. (*See* Compl. (Dkt. No. 1).) On February 16, 2024, the Action was transferred to the Southern District of New York. (*See* Dkt. No. 13.) On August 8, 2024, with leave from the Court, (*see* Dkt. Nos. 32, 33), Plaintiff filed an Amended Complaint, (*see* AC).

On September 9, 2024, Defendants filed a pre-motion letter seeking permission to file a Motion to Dismiss. (*See* Dkt. No. 38.) Pursuant to a briefing schedule set by the Court, (*see*

---

[1] In referring to a "Tier Assistant," the Court understands Plaintiff to be referencing the individuals that are assigned to assist inmates during Tier III disciplinary proceedings. *See Grant v. Annucci*, No. 16-CV-361, 2019 WL 4751518, at *6 (W.D.N.Y. Sept. 30, 2019) ("New York's regulations allow for an employee assistant to help a prisoner in preparing for a disciplinary hearing. The Second Circuit has also provided for an inmate to receive employee assistance when that inmate is charged with an offense warranting SHU confinement." (internal quotation marks and citations omitted)).

Dkt. No. 40), Defendants filed the Motion on October 17, 2024, (*see* Defs. Mot; Defs.' Mem. in Supp. Mot. to Dismiss ("Defs. Mem.") (Dkt. No. 45).)  Plaintiff filed his Opposition on November 13, 2024.  (*See* Pl. Opp. to Mot. to Dismiss ("Pl. Opp.") (Dkt. No. 48).)  On December 3, 2024, Defendants filed their Reply.  (*See* Defs.' Rep. in Supp. Mot. to Dismiss ("Defs. Rep.") (Dkt. No. 51).)

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must "draw all reasonable inferences in the [plaintiff's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *United States v. Medtronic, Inc.*, No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Faber v. 41Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570.  Certainly, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

When a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *4 (S.D.N.Y. Feb. 21, 2024) (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted)).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe his complaint liberally and interpret it 'to raise the strongest arguments that it suggests." *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *3 (S.D.N.Y. Nov. 2, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, No. 21-CV-9049, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022).  Notwithstanding a standard of review

comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Barkai*, 2024 WL 710315, at *4 (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

The Court construes Plaintiff's AC to raise a procedural due process claim related to the various deficiencies associated with his Tier III hearing. For the following reasons, the Court grants Defendants' Motion.

1. Procedural Due Process Claim

"In order to prevail in an action based on [Section] 1983 and the Fourteenth Amendment, a prison inmate must demonstrate a deprivation of a liberty interest protected by the Due Process Clause itself, or a violation of a state-created liberty interest." *Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *9 (S.D.N.Y. Sept. 30, 2018) (citation omitted). "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Second Circuit has made clear that "[t]he Due Process Clause does not protect against 'every change in the conditions of confinement having a substantial adverse impact' on inmates if those changes are 'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citation omitted) (quoting *Sandin v. Conner*, 515 U.S. 472, 478 (1995)). "Instead, the

Due Process Clause protects against restraints or conditions of confinement that 'exceed the sentence in an unexpected manner.'" *Id*. (alterations omitted) (quoting *Sandin*, 515 U.S. at 484).

With respect to the first requirement, "[p]rison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz,* 380 F.3d at 654 (quoting *Sandin*, 515 U.S. at 484). When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009) (citing *Arce*, 139 F.3d at 336).

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "Prison disciplinary proceedings," however, "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

Although the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," it has nevertheless established certain "guidelines for use by district courts in determining whether a

7

prisoner's liberty interest was infringed." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "[T]ypical punitive segregation conditions imposed for 101 days or fewer generally do not constitute 'atypical' conditions of confinement." *Hobes v. Rodriguez*, No. 24-CV-2484, 2025 WL 2324111, at *5 (S.D.N.Y. Aug. 11, 2025) (quoting *Abdur-Raheem v. Caffery*, No. 13-CV-06315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015)). "On the other hand, when a prisoner has been confined between 101 and 305 days, courts are generally required to develop a 'detailed record of the conditions of the confinement relative to ordinary prison conditions' to determine whether the prisoner's liberty interest was infringed." *Id.* (quoting *Palmer*, 364 F.3d at 64–65.) And finally, confinement for a period of 305 days or more is ordinarily sufficient on its own to rise to the level of an "atypical and a significant hardship." *See id.* (quoting *Colon*, 215 F.3d at 231).

Here, Plaintiff was confined for 73 days. (*See* AC, Ex. C at 15 (noting that Plaintiff's pre-hearing SHU confinement amounted to 13 days, and his post-hearing SHU sentence was 60 days).) Defendants argue that this is an insufficiently long sentence to implicate a liberty interest. (*See* Defs. Mem. 5.) The Court agrees. Courts in the Second Circuit have routinely found similar periods of confinement insufficient, by themselves, to implicate a liberty interest. *See Arriaga v. Otaiza*, No. 20-CV-6992, 2021 WL 5449849, at *6–7 (S.D.N.Y. Nov. 19, 2021) (allegations of 90 days of keeplock confinement insufficient to support a liberty interest); *Ruffin v. Travers-Marsh*, No. 17-CV-2564, 2018 WL 3368726, at *5 (S.D.N.Y. July 10, 2018) (75 days insufficient to implicate a liberty interest); *Williams v. Chuttey*, No. 15-CV-1278, 2017 WL 9673722, at *5 (N.D.N.Y. Sept. 5, 2017) (noting that 90 days of keeplock confinement was not a sufficient period of time, without more, to implicate a liberty interest), *report and recommendation adopted*, No. 15-CV-1278, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018), *aff'd*,

767 F. App'x 105 (2d Cir. 2019). Nor does Plaintiff's additional loss of privileges during this period render the conditions of his confinement significant or atypical, because "[l]oss of privileges during a period of punitive confinement is also generally not an atypical hardship." *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *18 (S.D.N.Y. Sept. 25, 2023); *see also Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *7 (S.D.N.Y. Mar. 13, 2018) (finding plaintiff was not subject to atypical hardship where he was sentenced to 60 days in the SHU and the "loss of privileges such as access to the phones, packages, and commissary"); *Branch v. Goord*, 05-CV-6495, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006) ("Plaintiff's privileges were withheld during confinement, but lost privileges do not constitute an atypical and significant hardship because they are within the expected parameters of the sentence imposed by a court of law." (internal quotation marks omitted)). For the foregoing reasons, the Court concludes that Plaintiff has failed to plausibly allege a Due Process violation.

2. Claims Relating to the Search of Plaintiff's Cell

Plaintiff also appears to raise a claim related to Defendants' failure to abide by various DOCCS directives during the search of his cell. (*See* AC ¶¶ 3, 6, 8, 14, 19.) But it is axiomatic that "the failure to follow a DOCCS Directive or prison regulation . . . does not give rise to a federal constitutional claim." *Javier v. Russo*, No. 21-CV-7097, 2023 WL 5532468, at *9 (S.D.N.Y. Aug. 28, 2023); *Madison v. Crowley*, No. 19-CV-6554, 2020 WL 2542636, at *8 (W.D.N.Y. May 19, 2020) (holding that a defendant's failure to follow DOCCS Directive 4910 was insufficient to state a constitutional claim because violations of DOCCS' directives are not, by themselves, actionable as a Section 1983 claim). Therefore, Plaintiff's claims relating to the corrections officers' compliance with DOCCS directives for searching his cell do not give rise to

a federal claim, and must be dismissed.² *See Cossette v. Edwards*, No. 20-CV-6427, 2022 WL 2342478, at *11 (S.D.N.Y. June 29, 2022) ("To the extent [the plaintiff] alleges that [the defendant] violated [] DOCCS policies, his claim must also be dismissed because the law is settled that the failure to follow a DOCCS Directive or prison regulation does not give rise to a federal constitutional claim." (internal citations and quotation marks omitted)); *Jackson v. Annucci*, No. 20-CV-2008, 2021 WL 2581340, at *1 n.2 (S.D.N.Y. June 23, 2021) ("To the extent that [the plaintiff] brings claims for failure to comply with DOCCS directives or related regulations, those claims are not actionable, and are therefore, dismissed.").

### III.    Conclusion

For the foregoing reasons, the Court grants Defendants' Motion.

If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is further advised that the second amended complaint will completely replace, not supplement, the Amended Complaint. The second amended complaint

---

² Though Plaintiff does not appear to argue as much, the Court also notes that the search of Plaintiff's cell does not give rise to a Fourth Amendment claim because "[i]t is well settled that an inmate has no reasonable expectation of privacy in his prison cell entitling him to protection of unreasonable searches as prohibited under the Fourth Amendment." *Lu v. Hermans*, No. 24-CV-1023, 2024 WL 4712353, at *4 (S.D.N.Y. Nov. 7, 2024) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)).

And while "inmates do retain a limited right to bodily privacy under the Fourth Amendment," *Campbell v. Trew*, No. 18-CV-5507, 2021 WL 3292226, at *8 (S.D.N.Y. July 30, 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (alterations adopted) (emphasis omitted)), " because an inmate bears the burden of showing that a search was unreasonable, to survive a motion to dismiss, the plaintiff must plead facts sufficient to give rise to a plausible inference that the search he challenges was unreasonable," *Flood v. Cappelli*, No. 18-CV-3897, 2019 WL 3778736, at *9 (S.D.N.Y. Aug. 12, 2019) (internal citations and quotation marks omitted) (alteration adopted). Plaintiff has not challenged the frisk he was subjected to as unreasonable, and therefore the Court does not consider such a claim. (*See generally* AC.)

must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.

The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 44) and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated:   September 23, 2025
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge