UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIE WILLIAMS,

*Plaintiff*,

v.

SERGEANT BONANO, *et al.*,

*Defendants*.

No. 24-CV-1586 (KMK)

OPINION & ORDER

Appearances:

Willie Williams
Attica, NY
*Pro Se Plaintiff*

Jeb Harben, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Willie Williams ( "Plaintiff"), proceeding pro se, brings this Action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Sgt. Bonano ("Bonano"), C.O. Russien ("Russien"), an officer identified only as Cheverez, and C.O. Cunningham ("Cunningham") (collectively, "Defendants"), alleging a search of his cell and the resulting disciplinary hearing and punishments, along with other restrictions during his incarceration, violated his constitutional rights. (*See* Second Am. Compl. ("SAC") (Dkt. No. 76).) Before the Court is the Defendants' Motion to Dismiss (the "Motion"). (*See* Defs.' Mot. to Dismiss (Dkt. No. 83).) For the following reasons, the Court grants the Motion.

# I. Background

## A. Factual Background

The Court takes all well-pleaded factual allegations in the Second Amended Complaint as true for the purposes of this Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023). The Court assumes the Parties' familiarity with the allegations relating to the search of Plaintiff's cell and subsequent disciplinary hearing and sentence, as detailed in the Court's previous Opinion and Order dismissing Plaintiff's First Amended Complaint. (*See Williams v. Bonano*, No. 24-CV-1586, 2025 WL 2711406, at *1 (S.D.N.Y. Sept. 23, 2025); First Am. Compl. ("FAC") ¶¶ 3–8 (Dkt. No. 34).) These allegations are substantively the same in the SAC; the new allegations chiefly focus on Plaintiff's explanation of the "atypical hardships" he has suffered since. (*See generally* SAC.)

Sometime after the April 4, 2023 disciplinary hearing and the conclusion of Plaintiff's special housing unit sentence, Plaintiff was transferred from Sing Sing Correctional Facility ("Sing Sing") to Attica Correctional Facility ("Attica"), where he is currently housed. (*See* SAC ¶ 9.) Plaintiff alleges that certain educational credits he had accumulated from associate's-degree coursework completed at his prior prison did not transfer properly with him to Attica. (*See* SAC ¶ 15.) As a result, he alleges he had to or will have to retake certain classes, delaying his tentative graduation date. (*See* SAC ¶¶ 14–15.) Plaintiff claims his transfer to Attica separated him from friends and family who could visit him during his time at Sing Sing, making it harder to maintain his relationships. (*See* SAC ¶¶ 9, 19–20.) Plaintiff also claims $1,500 worth of personal property was lost during his transfer; he has been restricted from tablet use for more than 1,000 days; his inbound email and mail communications are being screened by DOCCS pursuant to "Directive guidelines"; he filed a claim alleging that package room officers

at Attica stole a pair of boots his family sent him; and he mailed a book to his grandson that never arrived. (*See* SAC ¶¶ 20, 22–24, 26.)

B. Procedural Background

The Court assumes the Parties' familiarity with the procedural history of this case as detailed in its Opinion granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. *See Williams*, 2025 WL 2711406, at *2. On November 6, 2025, with the Court's leave, Plaintiff filed a Second Amended Complaint along with two addenda. (*See* SAC; Addendum in Supp. of SAC (Dkt. No. 75) ("First Addendum"); Addendum in Supp. of SAC (Dkt. No. 77) ("Second Addendum").) On December 18, 2025, Defendants filed a pre-motion letter seeking permission to file a Motion to Dismiss. (*See* Dkt. No. 81.) Pursuant to a briefing schedule set by the Court, (*see* Dkt. No. 82), Defendants filed the Motion on January 22, 2025, (*see* Mot to Dismiss (Dkt. No. 83); Defs.' Mem. in Supp. re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 84).) Plaintiff filed his Opposition on March 4, 2026. (*See* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 89).) On March 19, 2026, Defendants filed their Reply. (*See* Defs.' Reply in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 92).)

## II. Discussion

A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a plaintiff's claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, a court must "draw all reasonable inferences in the [plaintiff's] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *United States v. Medtronic, Inc.*,

No. 18-CV-1628, 2024 WL 4165522, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Faber v. 41Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

To survive a motion to dismiss, the Supreme Court has held that a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a [plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. Certainly, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

When a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Barkai v. Neuendorf*, No. 21-CV-4060, 2024 WL 710315, at *4 (S.D.N.Y. Feb. 21, 2024) (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted)). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe his complaint liberally and interpret it 'to raise the strongest arguments that it suggests." *Mejia v. Carter*, No. 21-CV-9049, 2022 WL 17653826, at *3 (S.D.N.Y. Nov. 2, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Barkai*, 2024 WL 710315, at *4 (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

Plaintiff brings the same causes of action as he did in his First Amended Complaint. (*See generally* SAC.) Although Plaintiff has added detail about the "atypical hardships" he suffered as a result of his detention and subsequent transfer, his fundamental contentions remain that the

search of his cell violated various DOCSS policies, his subsequent disciplinary hearing did not afford him adequate process, and the punishments that followed the hearing, along with other conditions of his confinement, violated the Constitution. (*See generally id.* ¶¶ 1–8.)

The Court begins with Plaintiff's argument that DOCSS procedures and directives were not properly followed in the search of his cell. As explained in the Court's prior Opinion, "Plaintiff's [§ 1983] claims relating to the corrections officers' compliance with DOCCS directives for searching his cell do not give rise to a federal claim, and must be dismissed." *Williams*, 2025 WL 2711406, at *5. Plaintiff also argues the search violated his privacy rights, (*see* Pl.'s Mem. 2), but "[i]t is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 509 (S.D.N.Y. 2012) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)) (internal quotation marks omitted); *see also Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) (declining "to recognize as legitimate any subjective expectation of privacy that [an incarcerated individual] might have in his prison cell"). Thus, because Plaintiff has not alleged new facts that would change the Court's analysis as to the search of his cell, his claims relating to the search are once again dismissed.

The Court next turns to Plaintiff's claims that procedural requirements were violated in his disciplinary hearing. (*See* SAC ¶ 38.) Plaintiff alleges that he was not allowed to call witnesses or testify on his own behalf and that he was not afforded an impartial hearing. (*See* Pl.'s Mem. 8.) Plaintiff is correct that in this context, due process requires an opportunity to call witnesses and an impartial hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 566–71 (1974). But "the full panoply of rights due [to] a defendant in [criminal] proceedings does not apply," *Vogelfang*, 889 F. Supp. 2d at 511—rather, in a prison disciplinary hearing, procedural due

process requires only that an incarcerated person "receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his [or her] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *see also Williams v. Menifee*, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (same). Plaintiff's Second Amended Complaint does not allege that any of these three requirements was not met. (*See generally* SAC). Indeed, attachments to the Second Amended Complaint indicate Plaintiff received notice of the hearing, (*see* SAC Ex. 1, at 23 (Dkt. No. 76-1)), Plaintiff was present at the hearing and able to question witnesses, (*see generally* SAC Ex. 2 (Dkt. No. 76-2)),[1] and Plaintiff received a written statement noting the disposition and evidence relied on, (*see* SAC Ex. 1, at 25).[2] While Plaintiff alleges he was not allowed to call witnesses, (*see* SAC ¶ 38), attachments to the Second Amended Complaint, the authenticity of which he does not dispute, show otherwise: for example, he called one incarcerated person as a witness, while another he called declined to testify, (*see* SAC Ex. 1, at 25; *see generally id.* Ex. 2 (the transcript of the proceeding, showing witness testimony)). Plaintiff claims he specifically was

---

[1] All page number citations to SAC exhibits are to the page number of the full document at the docket number of the exhibit.

[2] "[T]he [Second Amended C]omplaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," and Plaintiff has not contested the veracity of any of these attachments. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *see also Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("[D]istrict courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are attached to the complaint or incorporated in it by reference.'" (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

not allowed to call one witness, C.O. Vasquez, (*see* SAC ¶¶ 29, 34), but the Second Circuit has held that "[t]he right to call witnesses is limited in the prison context," including by the redundancy of any witness testimony, *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). Here, Plaintiff had the opportunity to question the other officer present during the search of his cell, including about Plaintiff's belief that the officers planted the contraband if Plaintiff wanted to, (*see* SAC ¶ 29), and Plaintiff has not shown what Officer Vasquez would testify to about the search itself that the other officer could not. (*See, e.g.*, SAC Ex. 2, at 44–45 ("Inmate Williams: . . . It was Russo and Vasquez . . . who came to my bed. . . . Hearing Officer Sheverez: Okay, well we're going to have Officer Russo here. So he can question Officer Russo."); *id.* Ex. 2, at 55–68 (indicating Officer Russo, spelled there Rousseau, testified).) Accordingly, the Court grants Defendants' Motion as to Plaintiff's procedural due process claims arising from his disciplinary hearing.

Plaintiff also suggests that the disciplinary action taken against him was the result of an anonymous tip and that there was therefore insufficient evidence to find him guilty of a disciplinary infraction. (Pl.'s Mem. 2.) But due process requires only that "some evidence support[] the decision by the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Although the Second Circuit "require[s] that . . . disciplinary determinations be supported by some '*reliable* evidence," *Elder v. McCarthy*, 967 F. 3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F. 3d 481, 488 (2d Cir. 2004)) (emphasis in original), the discovery of two contraband items in Plaintiff's cell and the officers' testimony, both of which he attaches to his Second Amended Complaint and neither of which he disputes, provide "some evidence" for the results of the disciplinary hearing, (*see* SAC Ex. 1, at 61 (incident report listing the cellphone and contraband earphones found in Plaintiff's cell); *id.* Ex. 2, at 56 (officer's

testimony about finding the contraband in Plaintiff's cell)). Thus, to the extent that Plaintiff's Complaint challenges the sufficiency of the evidentiary basis for his disciplinary determination, any such claim fails based on the existence of "some evidence" that supports the outcome. *See, e.g.*, *Bunting v. Nagy*, 452 F. Supp. 2d 447, 461 (S.D.N.Y. 2006) (finding "some evidence" standard met "in the form of the inmate disciplinary report and the testimony of" officers involved in the underlying conduct, so right to fair hearing was not violated).

Nor do Plaintiff's allegations about the conditions that followed provide a basis for a § 1983 claim. As the Court explained in its prior Opinion, "[p]rison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Williams*, 2025 WL 2711406, at *3. Plaintiff therefore must demonstrate that any disciplinary action taken against him resulted in an atypical hardship sufficient to implicate a liberty interest. *See, e.g.*, *Vogelfang*, 889 F. Supp. 2d at 510 ("[P]risoners subject to disciplinary proceedings can show a liberty interest *only* where . . . [the] disciplinary decision results in an 'atypical and significant hardship . . . ." (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (emphasis added) (internal quotation marks omitted)).

Plaintiff points to a number of examples that he claims constitute "atypical hardship" beyond his SHU confinement.[3] (*See generally* SAC ¶¶ 8–26.) Broadly summarized, these hardships are that 1) he was transferred from Sing Sing to Attica, meaning he is further away

[3] Plaintiff has not introduced any new facts that would change the Court's analysis as it relates to the specific conditions of his SHU confinement. The Court previously addressed in detail the question of whether his 73-day SHU confinement constituted an "atypical hardship" and concluded it did not, and the Court reaches the same conclusion here. *See Williams*, 2025 WL 2711406, at *4. Plaintiff's amendments to his complaint generally detail hardships he suffered following his release from the disciplinary confinement, so the Court focuses its analysis there.

from family and loved ones; 2) educational credits he had completed in a previous college program did not properly transfer, delaying his attainment of an associate's degree; 3) $1,500 worth of Plaintiff's property was lost during his transfer; 4) he has been on a "tablet restriction" that has limited his ability to communicate and receive photos and other content from friends and family; and 5) the conditions of his confinement may have violated the H.A.L.T. Act.[4] (*Id.*)

But Plaintiff has not alleged any facts suggesting Bonano (who claimed he ordered the search), Russien (who conducted the search), Cheverez (who conducted the hearing), or Cunningham (who testified at the hearing) were involved in any later events. (*See* SAC 1–2.) To bring a claim under § 1983, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F. 3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (internal quotation marks omitted); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[T]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."). Plaintiff has not claimed any Defendants transferred him to Attica or lost his property during his transfer. (*See generally* SAC.) Nor has Plaintiff alleged any of the four Defendants—none of whom, per the SAC, appears to work at Attica—had a hand in his tablet restrictions or Attica's processing of his college credits. (*Id.*) Accordingly, because Plaintiff has not alleged Defendants were involved at all in these events, they cannot provide the basis for a § 1983 claim against them. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015)

---

[4] For a description of the H.A.L.T. Act, see, *e.g.*, *Coleman v. Wolcott*, No. 24-CV-6182, 2025 WL 1695996, at *8 (W.D.N.Y. June 17, 2025) ("The HALT Act was enacted by the New York State Legislature in 2021 and went into effect April 1, 2022. The HALT Act, among other things, limits segregated confinement to fifteen consecutive days and twenty days within any sixty-day period.") (citation and internal quotation marks omitted).

(affirming dismissal of § 1983 claims against defendants who were not personally involved in the alleged conduct); *Green v. McLaughlin*, 480 F. App'x 44, 47 (2d Cir. 2012) (summary order) (same).[5]

Finally, Plaintiff raises the issue of whether his confinement may have violated the H.A.L.T. Act, a New York state law limiting the duration of solitary confinement. (*See* SAC ¶¶ 12, 16.) But federal courts do not have jurisdiction "over state law claims for money damages that are asserted against DOCCS employees who were acting in the scope of their employment when the alleged violation occurred." *Hamilton v. Martucello*, No. 24-CV-6500, 2025 WL 713032, at *6 n. 4 (W.D.N.Y. Mar. 5, 2025). Any such claims must "be brought exclusively in the New York Court of Claims as claims against New York State." *Id.* (quoting *DeMeo v. Koenigsmann*, No. 11-CV-7099, 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015)); *see also Baker v. Coughlin*, 77 F. 3d 12, 15 (2d Cir. 1996) (explaining New York Correction Law § 24's

[5] Even if Plaintiff alleged Defendants' personal involvement, these events would not support a § 1983 claim. First, Plaintiff has "no liberty interest under either federal or state law to be located at a particular prison facility," so "[his] transfer . . . cannot be the basis of a due process claim." *Tamarez v. Hochul*, No. 21-CV-10678, 2023 WL 4564670, at *8 (S.D.N.Y. June 30, 2023) (citing *Corley v. City of New York*, 14-CV-3202, 2017 WL 4357662, at *6 (S.D.N.Y. Sept. 28, 2017)) (internal quotation marks omitted). Second, "there is no property or liberty interest in a particular or individualized [prison] educational program," and Plaintiff has not claimed he was "wholly denied participation in an educational program," so the transfer of his college credits is also not actionable under § 1983. *Tripathy v. Schneider*, No. 21-CV-6267, 2021 WL 1579073, at *2 (W.D.N.Y. Apr. 22, 2021). In any event, Plaintiff's transcript shows he is still enrolled in college classes and 24 of his 25 credits apparently transferred. (*Compare* SAC Ex. 1, at 69 (Plaintiff's first transcript), *with id.* Ex. 3, at 1 (Plaintiff's second transcript)). Third, "property loss alleged by [a prisoner] . . . will not support a due process claim" under federal law if "adequate state post-deprivation remedies are available," which they are, because "New York . . . affords an adequate post-deprivation remedy in the form of . . . a Court of Claims action." *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *see also Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009) (same). Fourth, Plaintiff's tablet restriction is a loss of privileges, which the Court explained does not give rise to a § 1983 claim, *see Williams*, 2025 WL 2711406, at *4 (collecting cases), and other courts agree with respect to similar restrictions, *see Perry v. May*, No. 22-CV-688, 2024 WL 4336364, at *14 (N.D. Ohio Sept. 27, 2024); *Miranda v. Swift*, No. 17-CV-4000, 2020 WL 6462396, at *6 (N.D. Cal. Nov. 2, 2020).

bar on state-law suits for money damages against corrections officers in federal court). And as the Court explained in its prior Opinion, violations of DOCSS directives do not give rise to constitutional claims. *Williams*, 2025 WL 2711406, at *5 ("Plaintiff's claims relating to . . . DOCCS directives . . . do not give rise to a federal claim, and must be dismissed." (collecting cases)). Plaintiff is free to pursue such claims in state court, subject to any procedural or substantive hurdles they may face there.

## III. Conclusion

For the reasons set forth above, the Court grants Defendants' Motion. Because Plaintiff has already twice amended the Complaint, and because the Court's prior Opinion and Defendants' pre-motion letter put Plaintiff on notice of the deficiencies in the Second Amended Complaint, this dismissal of Plaintiff's § 1983 claims is with prejudice and the Court does not grant Plaintiff further leave to amend. The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 83, 87, 89), mail a copy of this Opinion and Order to Plaintiff, and close this case.

SO ORDERED.

Dated: September 11, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge